In the

# United States Court of Appeals

## For the Seventh Circuit

No. 25-1627

LYNNETTE J. KAISER, on behalf of herself and all other persons similarly situated, *et al.*,

*Plaintiffs-Appellees*,

*v.*

ALCOA USA CORP., *et al.*,

*Defendants-Appellants*.

Appeal from the United States District Court for the
Southern District of Indiana, Evansville Division.
No. 3:20-cv-00278 — **Richard L. Young**, *Judge*.

ARGUED OCTOBER 30, 2025 — DECIDED AUGUST 14, 2026

Before LEE, PRYOR, and KOLAR, *Circuit Judges*.

LEE, *Circuit Judge*. Lynnette J. Kaiser's late husband spent 15 years working for Alcoa USA Corp. ("Alcoa"), an aluminum company. Pursuant to the collective bargaining agreement in place at the time of his retirement, he and his wife were entitled to lifetime healthcare benefits once he retired. On January 1, 2021, Alcoa terminated the retiree healthcare benefits of his surviving spouse, Lynnette, and over 3,000

other recipients who, like Kaiser's husband, retired before 1993.

Seeking to prevent the termination of their healthcare benefits, Kaiser and others filed this purported class action, asserting a claim under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, against Alcoa and claims under § 502(a)(1)(B) and § 502(a)(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B), (a)(3), against Alcoa and three of its employee benefit plans (collectively "Defendants").

The district court granted Plaintiffs' motion for class certification, and Plaintiffs subsequently moved for summary judgment as to liability. The court granted that motion as well, relying on the doctrine of judicial estoppel to find that the class had a right to lifetime healthcare benefits from Alcoa and that Alcoa had breached the various collective bargaining agreements by unilaterally reducing healthcare benefits for retirees. The district court then issued an order which (1) declared that all class members are entitled to lifetime healthcare benefits from Defendants and (2) granted a permanent injunction, which required Alcoa to reinstate the plan in place prior to January 1, 2021, and entitled class members to submit claims for expenses accrued.

Defendants now appeal the class certification order and the summary judgment order. For the reasons discussed below, we affirm the former but reverse the latter.

## I. Background

Before discussing the facts, it will be helpful to present the general legal principles governing retiree healthcare benefits in the context of collective bargaining agreements ("CBAs").

CBAs often provide employees with pension plans and welfare benefit plans. At issue here are retiree healthcare plans that fall into the latter category. While ERISA imposes intricate requirements on pension plans, welfare benefit plans are "established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a). CBAs are among such "written instruments" and are interpreted "according to ordinary principles of contract law," so long as they are "not inconsistent with federal labor policy." *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015). Moreover, employers have "large leeway to design … welfare plans as they see fit." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833 (2003).

"Vested benefits" are those benefits that survive the expiration of the underlying agreement and "become forever unalterable." *Bland v. Fiatallis N. Am., Inc.*, 401 F.3d 779, 784 (7th Cir. 2005). Unlike pension plans, ERISA does not require that retiree healthcare benefits be vested. Indeed, such benefits will generally "cease, in the ordinary course, upon termination of the bargaining agreement." *Tackett*, 584 U.S. at 441–42 (citation omitted); *Rossetto v. Pabst Brewing Co., Inc.*, 217 F.3d 539, 543 (7th Cir. 2000) (noting presumption that employee's entitlement to retiree healthcare benefits expires with termination of CBA) (citing *Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 606 (7th Cir. 1993) (en banc)). At the same time, "[e]mployers, employees, and unions are free … to provide that health-care benefits *will* survive the underlying agreement, so that promised lifetime benefits will indeed survive for a lifetime." *Stone v. Signode Indus. Grp. LLC*, 943 F.3d 381, 385 (7th Cir. 2019) (emphasis in original); *see Tackett*, 574 U.S. at 442 (noting that "a collective-bargaining agreement [may] provid[e] in explicit terms that certain benefits continue after the agreement's expiration"). Accordingly, the "[v]esting of

health-care benefits is determined according to ordinary principles of contract law." *Stone*, 943 F.3d at 384 (7th Cir. 2019) (citing *Tackett*, 574 U.S. at 435); *see Barnett v. Ameren Corp.*, 436 F.3d 830, 832–33 (7th Cir. 2006).

Thus, to determine whether the retiree health benefit that a CBA provides vests (that is, survives the expiration of the agreement), we look to the CBA to see if it contains express or implied terms that provide for vesting. *See Stone*, 943 F.3d at 385. And in those cases where "the contract is ambiguous—due to either a patent or latent ambiguity—extrinsic evidence may be considered in determining whether the parties intended benefits to vest." *Id.* (citing *CNH Indus. N.V. v. Reese*, 583 U.S. 133, 137–38 (2018) (per curiam)). With that background, we turn to the facts.

Since 1968, Alcoa has negotiated a number of CBAs with unions from at least forty-eight different facilities across the United States. In those CBAs, Alcoa promised certain healthcare benefits to retirees, their spouses, and their dependents. The scope of these benefits is governed by the particular CBA in effect at the facility where the retiree worked at the time of retirement.

The CBAs all state that Alcoa will provide healthcare benefits to retirees and prohibit the company from diminishing them unilaterally. But none of the CBAs expressly define the duration of such benefits, and the CBAs themselves have all expired.

Until August 2020, Alcoa had been providing lifetime healthcare benefits to workers who had retired before June 1, 1993, along with their spouses and dependents (for convenience's sake, we will refer to them collectively as the "pre-1993

retirees"). In August 2020, Alcoa announced it would transition the pre-1993 retirees from their old healthcare plans to a new health reimbursement plan beginning on January 1, 2021. Under this new arrangement, Alcoa proclaimed, the company could terminate the retiree healthcare benefits "at any time." Dkt. 49-1 at 16.[1]

Believing this new plan unilaterally reduced healthcare benefits for pre-1993 retirees in violation of the CBAs, Lynnette Kaiser filed this class action lawsuit. At bottom, Plaintiffs seek to enjoin Alcoa's implementation of the new plan, contending that the company wrongfully and "unilaterally terminate[d] the retiree healthcare coverage it has provided to Medicare-eligible Class Members for decades" in favor of a "'Health Reimbursement Arrangement.'" Dkt. 1 ¶ 8. In their view, by failing to honor the provisions of the CBAs, Alcoa violated LMRA § 301 and (along with the other Defendants) violated ERISA § 502(a).

On February 11, 2022, Plaintiffs moved for class certification under Federal Rule of Civil Procedure 23(b)(2), and the district court granted the motion, certifying the following class:

> All former employees of Alcoa USA Corp., its predecessors, or affiliated companies (collectively, "Alcoa") who were represented by the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, ALFCIO/CLC ("USW"), Aluminum Trades Council of Wenatchee, Washington AFL-CIO ("ATC"), the Longview Federated Aluminum Council, or a

---

[1] "Dkt." refers to the docket number in the district court record.

predecessor union, together with their eligible
spouses, surviving spouses, and other dependents,
who as of December 31, 2020, were eligible to receive
uncapped health care benefits from Alcoa upon attain-
ing Medicare-eligibility, and whose Alcoa-provided
benefits or eligibility for those benefits was terminated
as of January 1, 2021.

Dkt. 108.

After additional discovery, the parties moved for sum-
mary judgment, and on March 25, 2024, the district court en-
tered partial summary judgment in Plaintiffs' favor, finding
Alcoa liable for breaching its contracts to provide healthcare
benefits.

Rather than examining the merits of Plaintiffs' claims,
however, the district court's decision was grounded in the
doctrine of judicial estoppel. In its view, Alcoa's position in
this case was "diametrically opposed" to its position in *Curtis
v. Alcoa, Inc.*, No. 3:06-cv-448 (E.D. Tenn.), *aff'd.*, 525 F. App'x
371 (6th Cir. 2013), where it had told the court that the
healthcare benefits for pre-1993 retirees were "guaranteed for
life." App. Op. App'x at 25–26. Concluding that Alcoa could
not contradict what it had said in *Curtis*, the district court
agreed with Plaintiffs that Alcoa had promised vested lifetime
retiree healthcare benefits in the relevant CBAs and had
breached the agreements by unilaterally reducing these ben-
efits.

As a result, on March 28, 2025, the district court issued an
order declaring that the class members are "entitled to life-
time healthcare benefits from Alcoa" and granted a perma-
nent injunction requiring Alcoa to "promptly reinstate and

maintain for the lifetime of all class members the fixed group
health and prescription drug benefit plan … provided to class
members before January 1, 2021." Dkt. 181. It also permitted
class members to obtain reimbursement by submitting claims
for health and prescription drug expenses incurred as of January 1, 2021.

Defendants appeal the district court's class certification order and its reliance on judicial estoppel to grant partial summary judgment as to liability. We consider each in turn.

## II. Analysis

### A. Class Certification

To obtain class certification, Plaintiffs must satisfy Rule
23(a) and (b) by a preponderance of the evidence. *Jacks v. DirectSat USA, LLC,* 118 F.4th 888, 895 (7th Cir. 2024) (citing *Bell
v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015)).
First, they must show that the purported class meets Rule
23(a)'s requirements of numerosity, commonality, typicality,
and adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1)–
(4). In addition, Plaintiffs must demonstrate that the putative
class falls within one of the three categories enumerated in
Rule 23(b). *Arandell Corp. v. Xcel Energy Inc.*, 149 F.4th 883, 891
(7th Cir. 2025). "Class certification is only proper if the district
court is satisfied after a rigorous analysis, that the perquisites
of Rule 23 have been satisfied." *Schroeder v. Progressive
Paloverde Ins. Co.*, 146 F.4th 567, 573 (7th Cir. 2025) (citation
modified).

We review a district court's decision to certify a case for
abuse of discretion, *Arandell Corp.*, 149 F.4th at 891, "which
can occur when a district court commits legal error or makes
clearly erroneous factual findings," *Santiago v. City of Chicago*,

19 F.4th 1010, 1016 (7th Cir. 2021) (citation modified); *see Svoboda v. Amazon.com Inc.*, 168 F.4th 956, 962 (7th Cir. 2026) (a district court has "considerable leeway to exercise its discretion unless it commits legal error or makes clearly erroneous factual findings").

Here, Defendants challenge the district court's determination that Plaintiffs satisfied the elements of commonality and typicality, Fed. R. Civ. P. 23(a)(2), (3). They also contend that the district court erred in certifying the class under Rule 23(b)(2).

### 1. Rule 23(a)(2) Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Commonality is generally satisfied if (1) "the same evidence will suffice for each member to make a *prima facie* showing on the question, or the issue is susceptible to generalized, class-wide proof" and (2) "determination of the question's truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Schroeder*, 146 F.4th at 573 (citation modified).

Here, the district court identified the following question as being common to the class: "Whether Alcoa first gained the power to unilaterally terminate benefits after 1993." Dkt. 108 at 5. After describing Plaintiffs' claims, the district court examined the record and found that the CBAs in effect prior to June 1, 1993, had placed "no limitations on the retirees['] benefits" and that such limitations first appeared during the 1993 bargaining cycle. *Id.* at 7. Although Defendants pointed out that different CBAs may have applied to different putative

class members, the district court observed that "the master [CBA] agreements contain language identical or similar to language guaranteeing that '[n]o employee covered … shall suffer any reduction in the level of any of the several healthcare benefits provided by the contract.'" *Id.* (quoting Dkt. 147-9 at 52).

The district court also noted that the master CBAs contained substantially identical language promising "that Alcoa could only reduce or eliminate benefits 'if subsequent governmental legislation provides for the reduction or elimination of the premium for Medicare Part B for any person.'" *Id.*; *id.* at 2 n.1. Moreover, the district court relied on *Curtis*, where the Sixth Circuit observed that a CBA with similar language "guarantee[d] that Alcoa would 'provide[] lifetime, uncapped retiree-healthcare benefits.'" *Id.* (quoting *Curtis*, 525 F. App'x at 373). The district court thus found that the record, while not conclusive, was sufficient to satisfy commonality under Rule 23(a)(2).

Disagreeing with this reasoning, Defendants rely heavily on the fact that the putative class members were subject to different CBAs depending on when and where they worked. Indeed, they point out, some of the relevant CBAs were lost, destroyed, or have not yet been identified and might contain materially different language. But significantly they concede that none of the CBAs expressly limited the duration of retiree healthcare benefits in any fashion. In other words, nothing in any of the CBAs explicitly restricted the healthcare benefits of retirees to the periods that the CBAs were in effect, nor did anything in the CBAs say that Alcoa had the ability to unilaterally change them.

In *Bidlack*, we recognized a presumption against the vesting of retiree healthcare benefits provided in CBAs. 993 F.2d at 606–07. But we later explained that the presumption "kicks in only if all the court has to go on is silence." *Rossetto*, 217 F.3d at 544. "If there is some positive indication of ambiguity, something to make you scratch your head (but the 'something' must be either language in the plan or the contract itself or the kind of objective evidence that can create a latent ambiguity under principles of contract law), the presumption fails." *Id*.

Here, Plaintiffs rely on the second "something" in *Rossetto*—namely, latent ambiguity as to whether Alcoa could unilaterally terminate the healthcare benefits of pre-1993 retirees. And, more to the point, Plaintiffs contend that the existence of this latent ambiguity can be proved with evidence common to the class.

A latent ambiguity is "[a]n ambiguity that does not readily appear in the language of a document, but instead arises from a collateral matter when the document's terms are applied or executed." *Cherry v. Auburn Gear, Inc.*, 441 F.3d 476, 484 (7th Cir. 2006) (quoting Black's Law Dictionary 88 (8th ed. 2004)). To rebut the *Bidlack* presumption using latent ambiguity, a party must show "by objective evidence … that anyone knowledgeable about the real-world context of the [CBA] would realize that it might not mean what it says." *Id.* at 481–82.

Although the parties use the terms interchangeably, "objective" evidence is not wholly synonymous with "extrinsic" evidence. Objective evidence is evidence that comes from a disinterested witness or is undisputed by the parties. *Rossetto*, 217 F.3d at 546. Extrinsic evidence, on the other hand, is

evidence related to a contract that is not found within the language of the contract itself. *See Much v. Pac. Mut. Life Ins. Co.*, 266 F.3d 637, 643 (7th Cir. 2001); *Camico Mut. Ins. Co. v. Citizens Bank*, 474 F.3d 989, 993 (7th Cir. 2007). The former is a subset of the latter; thus, we have said, "to be admissible to create an ambiguity in a clear-seeming written contract, the extrinsic evidence must be objective." *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 614 (7th Cir. 1998) (citation omitted). Such evidence could include third-party testimony about trade usage as well as party admissions. *Id.* (citation modified).

Here, Plaintiffs highlight statements by Alcoa's lead labor negotiator, Russell Porter, during the 1993 CBA negotiations. Porter was assistant general counsel for Alcoa in the 1980s and early 1990s before becoming director of industrial relations in 1992. Joint App'x at 152–53. He was "present for all of the negotiations up through the '93 negotiations." *Id.* at 154. Porter affirmed, under oath, that during the 1993 negotiations, he "believe[d] the state of the law was we couldn't touch" the healthcare benefits of a former employee who had retired prior to the 1993 negotiations. As a result, he stated, Alcoa "didn't even try to negotiate these changes for the currently retired people." *Id.* at 159. When asked, "to be clear, in 1993 your understanding was that you couldn't touch the benefits of the people who had already retired?" Porter responded, "Yes." *Id.* When asked, "you couldn't change them unilaterally?" Porter responded, "Yes." *Id.* at 160.

In addition to Porter's unequivocal testimony, Plaintiffs point out that Alcoa did not even try to unilaterally decrease healthcare benefits for pre-1993 retirees until January 1, 2021. This was despite the fact, Plaintiffs highlight, that Alcoa faced swelling costs for providing such benefits in the 1990s and

had bargained to decrease them for post-1993 retirees effective January 1, 2007. Appee. Br. at 66. This is the type of common objective evidence, Plaintiffs argue, that they will use to prove that, despite the CBAs' silence, the parties intended the healthcare benefits of pre-1993 retirees to continue past the expiration of the CBAs themselves.

As a general matter, we would be troubled if a district court were to grant class certification in a breach of contract case where the universe of relevant contracts were not in the record. But, here, it is undisputed that all of the CBAs (whether in the record or not) lacked any language regarding the duration of retiree healthcare benefits post-termination. *See* Dkt. 146 at 17 ¶ 8 (Defendants conceding that "[t]here is no language in the CBAs providing for a specific duration for retiree healthcare benefits"). In other words, they all treated the duration of such benefits in the same manner—by abject silence. Given this, Plaintiffs believe they can show latent ambiguity by common evidence, and they have proffered examples that seem to support this theory.

Whether Plaintiffs' common evidence will be enough to prove the merits of their claims is unknown. To demonstrate commonality, though, they need only show that questions relevant to liability—here, whether latent ambiguity exists in the CBAs regarding the vesting of pre-1993 retiree healthcare benefits and whether the parties agreed that the benefits did vest (thereby precluding Alcoa from diminishing them) despite nothing in the CBAs to that effect—can be proved by evidence common to the class. The bar Plaintiffs must hurdle is low. *Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 325 (5th Cir. 2008) ("[T]he thresholds for commonality and typicality

under Rule 23(a) are not high."). We believe on these facts Plaintiffs have done so.

Nevertheless, Defendants argue that *Cherry* and *Rossetto* considered the possibility of a latent ambiguity *only* in conjunction with the language of the actual contracts at issue. Here, they insist, Plaintiffs' theory is devoid of any reliance on the CBAs themselves. But this misreads *Cherry.* As we explained a bit later in that opinion, we "examine the contract to determine if the [CBA] is 'completely silent on the duration of health benefits,' if it 'makes clear that the entitlement expires with the agreement,' or '[i]f there is language in the agreement to suggest a grant of lifetime benefits.'" *Cherry*, 441 F.3d at 482 (quoting *Rossetto*, 217 F.3d at 547). Here, it is undisputed that the first condition applies to all the CBAs.

Defendants also suggest that there "might" be different objective evidence for each individual CBA because they were "negotiated at different times, by different people, sometimes representing different predecessor entities, and for different facilities … different things might have been said, different documents might have been generated." This argument has some superficial appeal, but Defendants offer nothing to back this speculation. Nor do they dispute the objective evidence Plaintiffs offer.

On these facts, we conclude that the district court's finding of Rule 23(a)(2) commonality was not an abuse of discretion.

### 2. Rule 23(a)(3) Typicality

Next, Defendants contest the district court's finding of typicality under Rule 23(a)(3), which requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

Typicality "may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members; it primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Scott v. Dart*, 99 F.4th 1076, 1091–92 (7th Cir. 2024) (citation modified).

In the district court's view, Kaiser's claims were identical to those of the putative class: she was entitled to retiree healthcare benefits because the objective evidence evinces the parties' understanding that the pre-1993 CBAs provided retirees with vested healthcare benefits that Alcoa could not unilaterally alter. "[A]ll the claims," the district court reasoned, "arise from a singular event: Alcoa's decision to terminate the old insurance plan." And, while there might be "minor differences of fact between Plaintiff Kaiser's and the putative class members' claims," the court found that these differences did not make Kaiser's claims atypical.

Defendants' challenge to typicality closely resembles their arguments against commonality. *See Priddy v. Health Care Serv. Corp.*, 870 F.3d 657, 660 (7th Cir. 2017) (the issue of "commonality and typicality tend to merge") (quoting *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)). Because Kaiser's claims arise under the CBAs applicable to one particular facility, they posit, her claims cannot be typical of other putative class members' claims, which are grounded in CBAs from other facilities. But, again, Defendants offer nothing to support this contention. To the contrary, they have acknowledged that all CBAs are silent as to the duration of these benefits. Accordingly, the district court's finding of Rule 23(a)(3) typicality was well within its discretion.

### 3. Rule 23(b)(2)'s Injunctive Class

Next, Defendants argue that the district court erred by certifying the class under Rule 23(b)(2) rather than Rule 23(b)(3). Rule 23(b)(2) permits certification, "if Rule 23(a) is satisfied" and if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Relevant here, the Supreme Court has held that Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Wal-Mart*, 564 U.S. at 360–61. This is not to say, however, that a member in a Rule 23(b)(2) class cannot receive any monetary relief at all; rather, to the extent that the class members receive such relief, it must be "incidental to the injunctive or declaratory relief." *Chi. Tchrs. Union, Loc. No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 443 (7th Cir. 2015) (citing *Wal-Mart*, 564 U.S. at 360).

The district court proceeded under Rule 23(b)(2) here because, in its view, "[t]he putative class seeks relief that would provide identical relief to each class member. In terminating the retirees' old healthcare benefits, Alcoa acted identically to each class member." Dkt. 108 at 13. Moreover, "the remedy sought by the class for Alcoa's action is a declaration and an injunction regarding Alcoa's contractual authority to modify benefits." *Id.*

Defendants take issue with this approach, noting that Plaintiffs had previously sought monetary damages and certification under Rule 23(b)(3). Moreover, in their view, the claims process fashioned by the court reveals that the main

thrust of the relief is monetary, not injunctive, in nature. But these arguments do not persuade.

Defendants are correct that Plaintiffs sought certification under Rule 23(b)(3), but they also requested certification under Rule 23(b)(2) as an alternative. Furthermore, as part of the judgment, the court entered a permanent injunction ordering Alcoa to "promptly reinstate and maintain for the lifetime of all class members the fixed group health and prescription drug benefit plan … provided to class members before January 1, 2021." Dkt. 181. It is true that the district court also ordered the creation of a claims process whereby class members could request reimbursement for health and prescription drug expenses incurred from January 1, 2021. But we have affirmed Rule 23(b)(2) classes in similar contexts.

*Johnson v. Meriter Health Services Employee Retirement Plan* is illustrative. 702 F.3d 364 (7th Cir. 2012). In that case, the plaintiffs filed a class action on behalf of four thousand participants in a pension plan. *Id.* at 365. Although the details are not relevant here, the plaintiffs claimed that they were not receiving the proper amount of benefits and asked for a declaratory judgment affirming their rights under the plan as properly construed. *Id.* at 365–66. They also requested any monetary relief to which they would be entitled under the plan. *Id.* at 369. The district court granted certification under Rule 23(b)(2), and we accepted the defendant's interlocutory appeal under Rule 23(f). *See generally id.*

Affirming the district court, we concluded that the monetary relief the plaintiffs requested was incidental to the declaratory relief because, once the district court laid out the terms of the plan, the computation of monetary damages "will just be a matter of laying each class member's pension-related

employment records alongside the text of the reformed plan and computing the employee's entitlement by subtracting the benefit already credited to him from the benefit to which the reformed plan document entitles him." *Id.* at 371; *see In re Allstate Ins. Co.*, 400 F.3d 505, 507 (7th Cir. 2005) ("When the main relief sought is injunctive or declaratory, and the damages are only 'incidental,' the suit can be maintained under Rule 23(b)(2).") (collecting cases).

Similarly, here, once a class member submits a claim for healthcare expenses incurred on or after January 1, 2021, the claims administrator can calculate the monetary relief due by comparing the total amount the class member incurred with the total amount the class member would have incurred had Alcoa not unilaterally diminished the healthcare benefits for pre-1993 retirees. *See In re Allstate*, 400 F.3d at 507 (noting that the monetary relief can be calculated by simply "read[ing] off from the plan").

Thus, the district court did not abuse its discretion in certifying the proposed class pursuant to Rule 23(b)(2).

**B. Summary Judgment**

Turning to the district court's summary judgment ruling, rather than evaluating the merits of Plaintiffs' claims, the court judicially estopped Alcoa from disavowing any obligation to provide lifetime healthcare benefits to pre-1993 retirees based on statements the company made in *Curtis*. We review a district court's application of judicial estoppel for abuse of discretion. *Looper v. Cook Inc.*, 20 F.4th 387, 399 (7th Cir. 2021) (citing *In re Knight-Celotex, LLC*, 695 F.3d 714, 721 (7th Cir. 2012)). Judicial estoppel "bars a party from prevailing on a position in court and then taking the opposite position at a

different stage or in new proceedings." *United States v. Sweatt*, 85 F.4th 1240, 1242 (7th Cir. 2023). It is "an equitable doctrine invoked by a court at its discretion." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)).

Judicial estoppel is "'not reducible to any general formulation of principle,' though the inquiry is typically informed by several factors." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 795 (7th Cir. 2013) (quoting *New Hampshire*, 532 U.S. at 750). The Supreme Court has identified three considerations to guide the inquiry:

> (1) whether "a party's later position must be clearly inconsistent with its earlier position;" (2) whether "the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled;" and (3) whether "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

*Id.* (quoting *New Hampshire*, 532 U.S. at 750–51). "[T]hese are not rigid requirements but 'general guideposts that must be considered in the context of all the relevant equities in any given case.'" *Id.* (quoting *In re Knight-Celotex, LLC*, 695 F.3d at 722).

In 1993, Alcoa faced increasing costs for funding retiree healthcare benefits, both as a result of increasing healthcare costs generally and new accounting rules. *See Curtis*, 2011 WL 850410, at *2. As a result, Alcoa approached the unions with a

proposal to cap healthcare expenditures for its retirees. After extensive bargaining, the unions accepted a cap on retiree healthcare benefits for those who retired after June 1, 1993, in exchange for higher pensions and 401(k) benefits. The cap went into effect on January 1, 2007.

At that point, a group of retirees who had retired after June 1, 1993 ("post-1993 retirees") sued Alcoa. Led by Charles Curtis, they argued that they were entitled to lifetime, uncapped retiree healthcare benefits. In response, Alcoa explained that the plaintiffs' theory would nullify the cap agreement that it had bargained for. After the *Curtis* court denied Alcoa's request for summary judgment, the case proceeded to an eight-day bench trial where Alcoa explained it "will [pay healthcare benefits] for the rest of these people's lives." Dkt. 132-21 at 26.

Ultimately, the district court in *Curtis* found for Alcoa, explaining that, although the plaintiffs were entitled to healthcare benefits for the duration of their lives, the benefits were subject to the cap the unions and Alcoa had negotiated in 1993. *Curtis*, 2011 WL 850410, at ¶ 237 ("[P]laintiffs' health benefits are lifetime benefits ... subject to the cap."). And the resulting judgment itself did not contain any declaration that the plaintiffs' retiree healthcare benefits were lifelong. *See Curtis* Dkt. 524.

Noticing this omission, the *Curtis* plaintiffs asked the court to amend the judgment to add a declaration stating, "Plaintiffs' healthcare benefits under the Alcoa Inc. plan(s) are vested lifetime benefits in accordance with ¶¶ 236 and 237 of the Court's Findings of Fact and Conclusions of Law filed March 9, 2011." *Curtis* Dkt. 525-1; *see also Curtis* Dkt. 526. Alcoa opposed the motion because, it said, "[e]ven before this Court's ruling, Alcoa was committed to providing benefits to

members of the plaintiff class at the 2006 cap level; as such, a formal order that those benefits are vested would provide members of the class with nothing more than what Alcoa has agreed to give them." *Curtis* Dkt. 532 at 6. The *Curtis* court then denied the post-1993 retirees' motion. *Curtis* Dkt. 541.

The *Curtis* plaintiffs appealed. For its part, Alcoa did not file a cross-appeal or contest the district court's findings; instead, it argued to the appellate court that the district court had correctly found the healthcare benefits of post-1993 retirees had vested but nevertheless were subject to the cap. The Sixth Circuit affirmed and explicitly reaffirmed that the retirees had lifelong healthcare benefits. *Curtis*, 525 F. App'x at 381 (explaining the district court did not commit error in finding "plaintiffs are entitled to *lifetime*, capped *healthcare benefits*"). Alcoa did not seek a modification of that order, a rehearing en banc, or cross-petition for a writ of certiorari.

Here, the district court cited several statements made by Alcoa during the *Curtis* litigation, believing them to directly contradict the positions taken by Alcoa in this case. First, when opposing the *Curtis* plaintiffs' motion for a preliminarily injunction, Alcoa said that the plaintiffs "seek to receive benefits as if they had retired before June 1, 1993." Dkt. 132-4 at 7. The district court remarked that this statement "necessarily implies that pre-1993 retirees had lifetime, uncapped benefits." *Kaiser*, 2024 WL 1283535, at *4. But, read closely, this was not an affirmative statement or argument made by Alcoa; it was simply a summary of the opposing side's position. Such statements cannot trigger judicial estoppel.

Second, Alcoa argued to the court in *Curtis* that the plaintiffs' theory was untenable because it would mean "that th[e] cap letter [that is, the agreement to impose a cap] had no effect

whatsoever, that the rights of the people who retired after 1993 are exactly the same as the rights of people who retired before 1993." Dkt. 132-21 at 59. The district court here understood this to mean that "Alcoa took the position before the *Curtis* district court that without the cap, the 'rights' of pre- and post-1993 retirees 'are the same,' (i.e., the only difference between pre- and post-1993 retirees was the cap)." *Kaiser*, 2024 WL 1283535, at *4. We do not believe that Alcoa's statement in *Curtis* was "clearly inconsistent" with its position here. *Grochocinski*, 719 F.3d at 795. Keep in mind that *Curtis* dealt with the rights of post-1993 retirees, and Alcoa's statement must be construed in that context. It was not a clear admission by the company that pre-1993 retirees had vested, uncapped benefits.

Third, in arguments to the court, Alcoa said in *Curtis* that it will "continue to" pay healthcare benefits "for the rest of [the plaintiffs'] lives." Dkt. 132-21 at 27. But Alcoa was referring to post-1993 retirees not pre-1993 retirees. Thus, this statement cannot tie Alcoa's hands here.

Finally, the district court highlighted several statements in Alcoa's post-judgment filings in *Curtis*. In opposing the plaintiffs' fee motion, Alcoa recognized that the court had found that the plaintiffs were entitled to vested benefits. But, because the court agreed with Alcoa that the benefits were capped, the company argued, the finding that they were vested was immaterial. In fact, Alcoa believed that the court's ultimate finding was consistent with Alcoa's position: "[I]t was Alcoa that had argued that, if Plaintiffs' benefits were vested at all, they vested subject to this cap, *and this Court agreed with Alcoa's position*." Dkt. 132-28 at 3 (emphasis added). After reviewing the *Curtis* proceedings, we agree

with Defendants that the overwhelming focus of that case was the applicability of the cap to post-1993 retirees, not the length of benefits for pre-1993 retirees. Moreover, Alcoa's statement—"if Plaintiffs' benefits were vested at all"—is conditional at best. And, given that the district court in *Curtis* expressly declined to add any language about vesting in the final judgment, we see no basis in the record to believe that the *Curtis* court accepted Alcoa's conditional statement as fact.

In short, having considered Alcoa's prior statements upon which the district court relied, we believe the doctrine of judicial estoppel does not bar Alcoa from contesting the merits in this case; therefore, we reverse the grant of partial summary judgment as to liability in Plaintiffs' favor. We leave to the district court's sound discretion whether to consider motions for summary judgment anew or press forward to trial.

\* \* \*

For these reasons, we AFFIRM the district court's order certifying the class pursuant to Fed. R. Civ. P. 23(b)(2) and REVERSE the grant of partial summary judgment as to liability. We remand for proceedings not inconsistent with this opinion.